**P & K CO., LTD., Appellee,**

v.

**OKLAHOMA DEPARTMENT OF MINES, Appellant.**

No. 75778.

Supreme Court of Oklahoma.

Jan. 23, 1996.

---

**41.** *See supra* note 33.

Stephen W. Smith, Smith & Smith, Attorneys, Henryetta, for Appellee.

Catherine Turk Frank, Assistant General Counsel, Oklahoma Department of Mines, Oklahoma City, for Appellant.

HARGRAVE, Justice.

Certiorari to Court of Appeals, Tulsa, Division VI, to review an unpublished opinion of the Court of Appeals. The issue addressed in the present matter is whether P & K Company is required under State coal mining pH effluent limitation guidelines to correct pollution factors which were caused by preexisting, abandoned, underground mines on its permit site.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

In 1984, P & K Company, Limited (P & K) was issued a permit to conduct strip coal mining and reclamation operations in Latimer County, Oklahoma by the Oklahoma Department of Mines. To obtain this permit, appellant was required to submit an application stating that all discharge from the mine site, if necessary, would be chemically treated prior to discharge. The application asserted that the discharge was to fall within the Federal and State pH guidelines. On November 16, 1987, P & K was served with a notice that it was in violation of the Oklahoma Coal Reclamation Act for discharging water from the permitted area with a pH level of less than 6.0. P & K was given until February 15, 1988, to correct the violation. On February 16, 1988, an inspection of the runoff water was conducted from the mining site showing that the pH levels were not in compliance with the Oklahoma Coal Recla-

mation Act. The Department of Mines entered a cessation order, prohibiting any further coal mining and reclamation operation at the permit site.

P & K filed an Application For Review requesting a formal evidentiary hearing. At the hearing, evidence was presented showing the pH levels on the permit were not in accordance with the pH guidelines, and that P & K had knowledge of the condition of the water prior to the grant of the permit. Appellee presented evidence at administrative hearing that the pH level of surface drainage was the result of abandoned mines in the area. Appellant also offered evidence that the water quality was as good or better than before appellee commenced its operations, and finally, the appellant demonstrated that the construction of a water treatment facility would cause P & K undue economic hardship. The Hearing Examiner determined that this was not an acceptable defense to the unsatisfactory pH levels.

The Hearing Examiner recommended that the notice of violation and notice of cessation were properly written and should be sustained. Thereafter, the Director of the Department amended the recommendations of the Hearing Examiner by finding that P & K filed an untimely application of review of the cessation order and failed to deposit escrow funds with the Department. The Director dismissed the application for review of the cessation order, but otherwise adopted the recommendation of the Hearing Officer.

On appeal to District Court, the judge determined that the regulatory agency could not require the appellee to treat and reduce pollutants other than those added by the appellee, relying on *Appalachian Power Company v. Train,* 545 F.2d 1351 (4th Cir. 1986). The District Court reversed the Department of Mines' cease and desist order. On appeal to the Court of Appeals, the decision of the District Court was reversed, based upon the Court of Appeals' reasoning that *Appalachian* applied only to pollution caused by steam electric generating plants, and that pollution taking the form of acid runoff water would be significantly different from thermal pollution caused by steam electric generation plants. Furthermore, the

Court of Appeals held that the appropriate standard of review on appeal from an administrative agency's decision, required an affirmance of the agency's decision "[i]f the facts determined by the administrative agency are supported by substantial evidence, and the order is otherwise free of error." *Tulsa Area Hospital Council v. Oral Roberts,* 626 P.2d 316, 320 (Okla.1981). We grant P & K's petition for writ of certiorari and vacate the opinion of the Court of Appeals.

In the Mining Lands Reclamation Act, the Oklahoma State Legislature stated the policy of the State of Oklahoma with regard to reclamation and conservation of land which has been disturbed by mining:

> It is hereby declared to be the policy of this state to provide for the reclamation and conservation of lands subjected to surface disturbance by mining and thereby to preserve natural resources, to encourage the productive use of such lands after mining, to aid in the protection of wildlife and aquatic resources, to encourage the planting of trees, grasses and other vegetation, to establish recreational, home and industrial sites, to protect and perpetuate the taxable value of property, to aid in the prevention of erosion, landslides, floods and the pollution of waters and air, to protect the natural beauty and aesthetic values in the affected areas of this state, and to protect and promote the health, safety and general welfare of the people of this State.

45 O.S.1991, § 722.

Furthermore, the Oklahoma State Legislature expressed the intent of its legislation in the Coal Reclamation Act of 1979. The purpose of the legislation is set forth as 45 O.S.1991, § 742.1 which reads:

> It is the purpose of this act to protect the rights of the surface owners and the environment, and to require reclamation of lands affected by surface and underground coal mining in a manner compatible with the social, environmental and aesthetic needs of the state. *If reclamation is not feasible, surface mining operations should not be conducted.* It is the intent of the Legislature to ensure the existence of an expanding and economically healthy coal

mining industry and that there be public participation in the development of rules and regulations appropriate to the State of Oklahoma and that the Department of Mines exercise the full reach of its powers to ensure the protection of the public interest through the effect control of surface mining operation.

(emphasis added).

In *Environmental Protection Agency v. National Crushed Stone Association,* 449 U.S. 64, 101 S.Ct. 295, 66 L.Ed.2d 268 (1980), The United States Supreme Court was faced with a analogous dilemma dealing with the economic ability of a discharging company to afford the "best practicable control technology currently available." The Supreme Court held that the Environmental Protection Agency was not required to consider economic capability in granting variances from BPT standards. 449 U.S. at 72, 101 S.Ct. at 301, 66 L.Ed.2d at 276 (1980). Economic ability is not considered in granting of variances.[1]

The EPA, however, in *Appalachian Power Co. v. Train,* 545 F.2d 1351 (4th Cir.1976), allowed a variance based on economic capability in only one instance. These specifically limited variances apply to Steam Electric Generating Plants, where water was taken into the plant, used for steam and then the hot water was returned into the navigable waterway. This is often referred to as thermal pollution and frequently the results are beneficial. *Appalachian* is not a case dealing with acid water taken from ground water and then discharged into a waterway, thus the present case does not fit the EPA exception.

Additionally, in an administrative case persuasive on this issue, acid water causing a violation comparable to the present fact pattern, originated as contaminated ground water from a previously mined area. This water left the disturbed area as surface drainage. The Interior Board of Surface Mining and Reclamation Appeals maintained that all surface water drainage from the area disturbed by surface mining and reclamation operations must comply with the effluent limitation of the regulation even if it originates as contaminated ground water from previously mined areas. *Cravat Coal Co., Inc.,* 2 Interior Board of Land Appeals 249, 87 Interior Dec. 416, 418–420 (1980), This opinion was rendered by the Federal administrative agency responsible for the review of enforcement of Federal effluent limitation guidelines.

In *Tulsa Area Hospital Council v. Oral Roberts,* 626 P.2d 316, 320 (Okla.1981), this Court held:

> Great weight is to be accorded the expertise of an administrative agency and a presumption of validity attaches to the exercise of expertise when the administrative agency is reviewed by the judiciary. A court of review may not substitute its own judgment for that of an agency, particularly in the area of expertise which the agency supervises. The rationale for this rule is that courts do not possess the specialized knowledge, training, experience or competency to substitute opinions for the judgment of qualified experts. The legislature has recognized that the expertise in some cases of legislative authority is better left to those who have refined abilities in narrow areas, controlled only by general guidelines established by the legislature. *If the facts determined by the administrative agency are supported by substantial evidence, and the order is otherwise free from error, the decision of the agency must be affirmed.*

(emphasis added).

The State of Oklahoma has adopted 40 CFR § 434.52,[2] effluent limitation guidelines representing the degree of effluent reduction

---

1. However, the Supreme Court in *National Crushed Stone,* stated in Footnote # 25 "... in only one instance has EPA stated that it would consider economic capability in relation to BPT variance applications, 43 Fed.Reg. 44846–44848 (1978). This was in response to the Fourth Circuit Court of Appeals' decision in *Appalachian Power Co. v. Train,* 545 F.2d 1351 (4th Cir.1976) ..." This case dealt with thermal pollution.

2. Oklahoma Surface Coal Mining Permanent Rules and Regulations § 816.42(b). The Provisions of the Coal Reclamation Act of 1979 are implemented by the Oklahoma Surface Coal Mining Permanent Rules and Regulations. See 45 O.S.1991, § 742.1 et seq.

attainable by application of the Best Practicable Control Technology Currently Available (BPT). Power has been granted to the Oklahoma Department of Mines to enforce the requirements of the Coal Reclamation of Act of 1979.[3] The agents of the Oklahoma Department of Mines are the qualified experts in the present case. Substantial evidence was presented at the administrative hearing that P & K Co., Ltd. was in violation of the pH guidelines. The order is otherwise free from error and the decision of the Oklahoma Department of Mines must be affirmed.

Moreover, the intent of the Legislature is plainly defined by Statute that if reclamation is not feasible, surface mining operations should not be conducted. In the present case the substantial evidence presented by the State of Oklahoma is in accordance with the statutory intent, and therefore, P & K's economic argument is without merit, especially since there was evidence presented at the evidentiary hearing that P & K was aware of problems with the ground water in the area prior to the mining and reclamation process. P & K went into this business venture with full knowledge of the economic danger involved, knowing what was required by the State guidelines and the economic capability of the applicant is not a ground to frustrate the legislative intent of the State Statutes.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; JUDGMENT OF THE DISTRICT COURT REVERSED.**

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur.

OPALA and WATT, JJ., dissent.